UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYELA D. BROCKS,

              Plaintiff,                      Case No. 2:19-cv-12621
                                                  District Judge Laurie J. Michelson

v.                                           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART & DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), GRANT IN PART & DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), and REMAND THIS MATTER TO THE COMMISSIONER

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART**

Plaintiff's motion for summary judgment (ECF No. 12), **GRANT IN PART and**

**DENY IN PART** Defendant's cross-motion for summary judgment (ECF No. 15),

and **REMAND** this matter to the Commissioner for issuance of a decision that

rectifies the error in the ALJ's treatment of the opinion evidence and any error

flowing therefrom.

## II.   REPORT

Plaintiff, Syela D. Brocks, brings this action under 42 U.S.C. §§ 405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance (DI) and supplemental security income (SSI) benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's reply (ECF No. 16), and the administrative record (ECF No. 9).

### A.   Background and Administrative History

### 1.   Prior decision by ALJ Weathers

Plaintiff applied for DI benefits in March 2013.  (R. at 76, 93.)  Her application was denied at the initial level on May 1, 2013.  (R. at 70, 76, 93.)  She requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 59.)  On July 23, 2014, ALJ Ena Weathers held a hearing, at which Plaintiff and a vocational expert (VE), Harry Cynowa, testified.  (*Id*.)  On September 16, 2014, ALJ Weathers issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 56-73.)  For purposes of the foregoing analysis, it is helpful to note that the relevant period for ALJ Weathers's decision is the original AOD of September 5, 2011 through September 16, 2014.  (R. at 61, 69.)

2

## 2. Decision under review by ALJ Dodson

By comparison, the relevant period for ALJ Dodson's decision – which is the subject of the instant appeal – is the amended AOD of <u>July 23, 2015 through June 28, 2018</u> (R. at 26). Plaintiff filed the DI and SSI applications at issue in this appeal in April 2016, alleging that her disability began on September 5, 2011, at the age of 39. (R. at 203, 210.) In her disability report, she alleged that certain conditions (neck, back, leg, ankle, shoulder, and hip injuries from a car accident, as well as high blood pressure, asthma, sleep apnea, depression and anxiety) limit her ability to work. (R. at 232.) Her applications were denied on September 7, 2016. (R. at 74-124.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 125-126.) On May 8, 2018, ALJ John Dodson held a hearing, at which Plaintiff and a vocational expert (VE), Luann Castellana, testified. (R. at 31-55; *see also* R. at 298.) On June 28, 2018, ALJ Dodson issued an opinion, which recognized the amended alleged onset date of July 23, 2015 and determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-30, 230, 301.)

Plaintiff submitted a request for review of the hearing decision. (R. at 200-202.) However, on July 18, 2019, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Dodson's decision became the Commissioner's

final decision.  Plaintiff timely commenced the instant action on September 6, 2019.

### B.    Plaintiff's Medical History

The administrative record contains approximately 1,052 pages of medical records, which were available to the ALJ at the time of the June 28, 2018 decision. (R. at 30, 316-1367 [Exhibits 1F-12F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since July 23, 2015, the amended alleged onset date (AOD) of disability.  (R. at 16.)  At **Step 2**, the ALJ found that Plaintiff had an unusually long list of severe impairments (left shoulder osteoarthritis and impingement syndrome; osteoarthritis of her lumbar spine, thoracic spine, bilateral hips, and left knee; left hip impingement syndrome; status post right ankle fracture; bilateral Achilles tendinosis; right carpal tunnel syndrome, status-post release; bilateral De Quervain's tenosynovitis, status-post repair (right); gastro-esophageal reflux disease (GERD); gastritis; irritable bowel syndrome (IBS)/bariatric disorder; asthma; depression; anxiety; obesity, and obstructive sleep apnea).  (*Id*. at 16-17.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed

impairments. (*Id*. at 17-18.) **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

that Plaintiff had the RFC:

> . . . to perform sedentary work [*i.e., exertional limitations*]. . . except
> she must avoid concentrated exposure to humidity, vibration,
> pulmonary irritants, and hazards [*i.e., environmental limitations*]. The
> claimant must not work with the public, but can have occasional
> interaction with co-workers and supervisors [*i.e., social interaction
> limitations*]. Lastly, she is limited to unskilled work with simple,
> routine, and repetitive tasks [*i.e., sustained concentration and
> persistence limitations*].

(*Id*. at 18-25.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work. (*Id*. at 25.) At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ found that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 25-26.) The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from July 23, 2015 (the amended

AOD of disability) through the date of the decision. (*Id*. at 26.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

**D.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

As set forth above in further detail, the time periods evaluated in ALJ Walters and ALJ Dodson's decisions do not overlap.  (ECF No. 15, PageID.1454 n.1, 1461.)  *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018) ("An individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold.").  The instant appeal takes issue with the latter opinion, namely ALJ

Dodson's: (1) treatment of the opinion evidence; and, (2) evaluation of Plaintiff's symptoms. (ECF No. 12, PageID.1432-1444; *see also* ECF No. 16.)

### 1. Whether the ALJ appropriately evaluated the opinion evidence?

Plaintiff's first statement of error concerns the ALJ's treatment of opinion evidence, namely the opinions of state agency psychological consultant Mira Krishnan, Ph.D. and treating psychologist Megan E. Riehl, Psy.D. (ECF No. 12, PageID.1434-1441.) Plaintiff has the burden of proof on this issue. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### a. Mira Krishnan, Ph.D. (state agency psychological consultant)

### i. The state agency psychological consultant adopted the prior ALJ findings, which included a pace limitation.

Plaintiff's prior RFC – determined by ALJ Weathers on September 16, 2014 – noted that she could "perform tasks without strict production demands[.]" (R. at 63, 66-67.) This opinion was before state agency psychological consultant Mira Krishnan, Ph.D. when she issued her August 26, 2016 opinion, in several cases noting "the ALJ findings are adopted . . . ." (R. at 76-78, 83, 87-88, 93, 95-96, 100, 104-105.) Dr. Krishnan's assessment of the "Paragraph B" factors concluded that Plaintiff had moderate difficulties in "maintaining concentration, persistence or pace." (R. at 82, 100.) Dr. Krishnan's lengthy additional explanation for the

psychiatric review technique (PRT) concludes by stating: "In the absence of evidence of worsening over time, the ALJ findings are adopted with respect to severity and residual functioning." (R. at 83, 100.) Although Dr. Krishnan opined that Plaintiff was "not significantly limited" in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" (R. at 87, 104), Dr. Krishnan ultimately stated: "Overall, the ALJ findings are adopted. From a Y perspective, [claimant] is limited to work in environments that have *no strict production demands*, doing non-tandem tasks with no more than occasional interaction with the general public." (R. at 88, 105 (emphasis added).)

### ii. The latest RFC does not contain a pace limitation.

The ALJ's review of the mental health opinion evidence acknowledged Dr. Krishnan's August 26, 2016 opinion (*see* R. at 82-84, 99-101 [Psychiatric Review Technique], 86-88, 104-105 [Mental RFC Assessment]) as follows:

> It was Dr. Krishnan's opinion the claimant's mental impairments cause only "mild" functional limitations in her ability to perform activities of daily living and in her ability to maintain social functioning and "moderate" limitations in her ability to maintain concentration, persistence and pace. The undersigned gives substantive weight to the opinion provided by Dr. Krishnan because the State Disability Determination Service consultant reviewed the medical evidence of record and her knowledge of the Social Security Administration rules and regulations make her uniquely qualified to give opinions

regarding the claimant's functional ability.  Further, her opinion is
consistent with the medical evidence of record, as noted above.

(R. at 22-23.)  Thus, the ALJ considered the specialization factor, as well as the

supportability and/or consistency factors – 20 C.F.R. §§ 404.1527(c)(3),(4),(5)

416.927(c)(3),(4),(5) – in assigning this opinion "substantive weight."  (R. at 22-

23.)

### iii.  Plaintiff takes issue with the absence of a pace limitation.

Plaintiff argues that ALJ Dodson never mentioned Dr. Krishnan's opinion of

RFC "concerning no strict production quotas," and cited "only to the opinion[']s

'paragraph B' findings."  (ECF No. 12, PageID.1434.)  In other words, Plaintiff

contends that the ALJ's decision is "silent" as to Dr. Krishnan's mental RFC

assessment.  (*Id*., PageID.1435; R. at 86-88, 104-105.)  Plaintiff claims this was

error, because 20 C.F.R. §§ 404.1527(e), 416.927(e) requires the ALJ to "explain

in the decision the weight he gave to this opinion if there is no treating source

opinion to which controlling weight can be given."  (*Id*., PageID.1435.)

To be clear, at Step 3, ALJ Weathers and ALJ Dodson – albeit assessing

different relevant periods – each found that Plaintiff had moderate difficulty /

limitation with respect to concentration, persistence, or pace.  (R. at 17-18, 63.)

However, unlike the September 2014 RFC, which required the absence of strict

production demands (R. at 63-64), and despite the assignment of substantive

weight to Dr. Krishnan's intervening August 2016 opinion (which itself included that Plaintiff is "limited to work in environments that have no strict production demands") (R. at 88, 105), ALJ Dodson omitted such a restriction from his June 2018 RFC determination (R. at 18-19).

Plaintiff contends that the omission of a pace limitation is not "mended" by ALJ Dodson's limitation to "simple, routine, and repetitive tasks." (R. at 19, ECF No. 12, PageID.1436.) *See Cheeks v. Comm'r of Soc. Sec.*, 690 F. Supp. 2d 592, 602 (E.D. Mich. 2009) (Feikens, J., *accepting report and recommendation of* Whalen, M.J.) ("The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies in pace."); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("The ALJ's streamlined hypothetical omitted these speed- and pace-based restrictions completely. The hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job. Accordingly, Ealy's limitations were not fully conveyed to the vocational expert.").

However, as the Commissioner correctly notes, "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work

is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Kepke . . . has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work.")  (ECF No. 15, PageID.1460-1461.)

### iv.   An ALJ need not adopt an opinion in its entirety.

The Commissioner correctly contends that, notwithstanding the ALJ's assignment of "substantive weight" to Dr. Krishnan's opinion, the ALJ need not adopt the opinion entirely or explain the weight given to each individual restriction.  (ECF No. 15, PageID.1458-1459.)  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Kondrashov v. Comm'r of Soc. Sec.*, No. 16-CV-14044, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018) (Majzoub, M.J.) ("he cites no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion."), *report and recommendation adopted*, No. 16-14044, 2018 WL 1141802 (E.D. Mich. Mar. 2, 2018) (Cox, J.).

> **v.** **Nonetheless, it is not clear how the ALJ accounted for the Step 3 "moderate" limitations in CPP within Plaintiff's RFC.**

"Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). The September 2016 Disability Determination Explanation (DDE) for Plaintiff's DI claim (Title XVI) and the ALJ's June 28, 2018 written decision each cite *Drummond*. (R. at 13, 107.) *See also* Acquiescence Ruling 98-4(6) ("Effect Of Prior Findings On Adjudication Of A Subsequent Disability Claim Arising Under The Same Title Of The Social Security Act . . . .") (S.S.A. June 1, 1998). Still, the Sixth Circuit has explained:

> The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government. At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings.

*Earley*, 893 F.3d at 931. (*Id.*, PageID.1461 (emphasis in original).)

The Commissioner contends that the ALJ Dodson "provided a basis for why he did not adopt Dr. Krishnan's entire opinion" when – notwithstanding Dr. Krishnan's adoption of ALJ Weathers's findings (R. at 83, 87-88, 100, 104-105) – ALJ Dodson noted that "new and material evidence" had been submitted and there had been "a change in condition since the prior decision[.]" (R. at 14.) (ECF No.

15, PageID.1459.)  However, this assertion appears within the "jurisdiction and procedural history" portion of the ALJ's decision and without any further detail, stating generically that "the evidence of record supports the below [RFC]."  (R. at 14.)  The Commissioner also contends that "the record fails to show that the production restriction was supported by the evidence."  (*Id.*, PageID.1459-1460.)  However, "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order."  *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).  Nor may they engage in *post hoc* justification.  *See*, *e.g.*, *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, *7 (6th Cir. Sept. 16, 1993) ("the district court erred by adopting the Secretary's *post hoc* rationalizations for its conclusion that the income was unearned income."); *Mendyk v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-11730, 2019 WL 4053949, at *7 (E.D. Mich. Aug. 7, 2019) (Patti, M.J.) ("the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient.") (referencing cases), *report and recommendation adopted sub nom. Mendyk v. Comm'r of Soc. Sec.*, No. 18-CV-11730, 2019 WL 4040067 (E.D. Mich. Aug. 27, 2019) (Cleland, J.).

As the ALJ recognized at Step 3, the "Paragraph B" limitations are not an RFC assessment, and a mental RFC assessment for purposes of Steps 4 and 5 "requires a more detailed assessment."  (R. at 18.)  The ALJ further stated that his following RFC assessment "reflects the degree of limitation . . . found in the

'paragraph B' mental functional analysis." (*Id.*)  While the Court agrees that Plaintiff "retains the burden of proving her lack of residual functional capacity[,]" *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008), and while Plaintiff may only be relying upon the state agency psychological consultant's mental RFC assessment (R. at 86-88, 104-105), the ALJ's decision does not clarify how the RFC accounts for the Step 3 "moderate" limitations in CPP.  If, as the Commissioner asserts, "the record supports his decision to exclude the production requirement[,]" (*see* ECF No. 15, PageID.1460-1461), it is not readily apparent how.

### vi.    Whether the error was harmless given the ALJ's Step 5 conclusion?

Finally, Plaintiff describes the jobs offered by the VE at the hearing and used by the ALJ at Step 5 – a nut sorter (DICOT 521.687-086) and a final assembler (DICOT 713.687-018) – as "appear[ing] to be quota-driven positions," (R. at 26, 48-49), and she contends that "[t]here is no evidence that [she] could perform the jobs identified by the [VE] if she is limited to no strict production demands."  (ECF No. 12, PageID.1436-1437.)  The Commissioner correctly notes that Plaintiff "fails to point to any evidence within this record that supports her argument."  (ECF No. 15, PageID.1461.)  Yet, while the Commissioner focuses on Plaintiff's counsel's "fail[ure] to include the production requirement in any of th[e] hypotheticals[,]" and relies upon *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977,

982 (6th Cir. 2011) ("Dr. Guerrero ultimately concluded that plaintiff could adapt to changes in non-complex work situations that were not too stressful. It thus appears that the ALJ adequately accounted for this limitation by restricting the hypothetical question to simple work and by excluding complex or detailed jobs.") (*id.*, PageID.1462), this misses the mark of Plaintiff's position on harmless error (ECF No. 12, PageID.1436-1437; *see also* ECF No. 16, PageID.1478-1479.) Perhaps it could have been put more artfully, but, as the Undersigned reads this argument, Plaintiff contends that the alleged error in the ALJ's treatment of Dr. Krishnan's opinion, which may otherwise have resulted in the inclusion of a pace limitation, is not necessarily cured by the particular jobs used in support of the ALJ's Step 5 conclusion, each of which seems to be "quota-driven."   In other words, it is hard to imagine that Plaintiff could successfully engage in and keep jobs as a nut sorter or final assembler at the pace and output of her own choosing.

### b.      Megan E. Riehl, Psy.D. (treating psychologist)

By way of background, Plaintiff's amended AOD of July 23, 2015 "corresponds with the date Ms. Brock established treatment with the Michigan Medicine Gastrointestinal clinic for worsening GI symptoms."  (R. at 301.) Plaintiff describes Dr. Riehl as "a pain psychologist in the [Michigan Medicine Gastrointestinal] clinic[.]"  (R. at 301.)  The medical evidence of record (MER) includes multiple treatment notes by Dr. Riehl, which span the periods from

September 10, 2015 to September 15, 2016 (R. at 739-937) and January 29, 2018 to April 24, 2018 (R. at 1254-1292, 1299-1330).[2]  During the latter period, on April 5, 2018, Dr. Riehl authored a letter, which, *inter alia*, explained the reasons Plaintiff was referred to her in September 2015, described the ongoing treatment plan, noted that she was seeing Plaintiff "one to two times per month," and ultimately concluded:  "It is likely that patient's ongoing medical and psychological symptoms will continue to impact her life in significant ways which are not conducive to a  traditional work environment."  (R. at 1190-1191 [Ex. 11F].)

It does not appear that ALJ Dodson acknowledged Dr. Riehl by name or by role at any point in the June 28, 2018 decision.  (*See* R. at 10-30.)  The ALJ expressly cited multiple records when reviewing evidence of Plaintiff's mental health, although seemingly only two of her visits with Dr. Riehl and without attribution (R. at 22, 764-765, 790), after which he made various assignments of weight to the opinion evidence (R. at 22-23).  In what appears to be ALJ Dodson's only express reference to Dr. Riehl's April 5, 2018 medical source statement

---

[2] Dr. Riehl's January 29, 2018 progress notes explain that Plaintiff "has lapse in services due to my maternity leave and her health issues."  (R. at 1255.)  In her motion, Plaintiff explains that she "continued treatment with her primary care physician and gastroenterologist for her GI impairments during this period."  (ECF No. 12, PageID.1440 n.4; R. at 1031-1036 [Allison Laboon Ruff, M.D., Feb. 21, 2017], 1069-1074 [Chanakyaram Ayyadap Reddy, M.D., Apr. 15, 2017], 1234-1239 [Dr. Reddy, Oct. 12, 2017].)

(MSS), and again without attribution, the ALJ afforded the opinion "limited weight

because the medical evidence of record, as noted above[,] does not support it.

Further, whether an individual is 'disabled' under the Social Security Act is an

opinion reserved to the Commissioner[.]"  (R. at 23, 1190-1191.)

   Plaintiff argues that ALJ Dodson "failed to provide good reasons for the

weight" given to "the opinion of Dr. Riehl, Ms. Brocks's treating gastrointestinal

psychologist."  (ECF No. 12, PageID.1437-1441; *see also* ECF No. 16,

PageID.1479-1481.)  Unquestionably, as noted above, the ALJ considered the

supportability and/or consistency factors – 20 C.F.R. §§ 404.1527(c)(3),(4),

416.027(c)(3),(4), as well as 20 C.F.R. §§ 404.1527(d), 416.027(d) ("Medical

source opinions on issues reserved to the Commissioner."), in affording "limited

weight" to Dr. Riehl's MSS.  The Commissioner notes as much when arguing that

"[t]he ALJ properly found that Dr. Riehl's opinion was entitled to limited weight."

(ECF No. 15, PageID.1462, 1464.)

   However, Plaintiff convincingly argues that the ALJ's analysis "falls far

short of the law[,]" namely with respect to the "treatment relationship" and

"specialization" factors, 20 C.F.R. §§ 404.1527(c)(2),(5), 416.927(c)(2),(5).  (ECF

No. 12, PageID.1438-1441.)  Preliminarily, at least as to this piece of opinion

evidence, "[t]he decision makes little reference to the treatment record to assess

supportability." (ECF No. 12, PageID.1439; R. at 23.)[3]  This cause is not aided by the ALJ's generic statement at Step 3 that "[n]o treating, non-treating, or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment," (R. at 17), nor is it aided by the ALJ's generic statement within the RFC determination that "a review of the record in this case reveals no restrictions recommended by the treating doctors[,]" (R. at 24.)  Likewise, while the Commissioner alleges a lack of corroboration between Dr. Riehl's treatment recommendations – such as those within her September 10, 2015 progress notes (R. at 741) – and her April 5, 2018 MSS (R. at 1190-1191) (*see* ECF No. 15, PageID.1468), the subsequent reviewer should not have to speculate about the supportability factor.  *Hyatt Corp.*, 939 F.2d at 367.

Second, it is questionable whether the ALJ appropriately considered the Plaintiff's treatment relationship with Dr. Riehl.  Even though the ALJ's mental health evidence review cites three pages of Dr. Riehl's records, each of which was dated January to February 2016 – in one case remarking that it was "her fifth session" (R. at 22, 764-765, 790), these were earlier on in Dr. Riehl's treatment, which lasted at least until April 24, 2018 (R. at 1329-1330).  True, an ALJ need not

---

[3] The Undersigned notes that there is other discussion of "support" in the ALJ's written decision, which is followed by an extensive string cite of records.  (R. at 23.)  But, it follows the opinion evidence discussion and is within what is fairly considered the subjective statement section.  (R. at 23-24.)

expressly discuss each piece of evidence in his decision. *Bailey v. Comm'r of Soc. Sec.,* 413 F.App'x 853, 855 (6th Cir. 2011); *Kornecky v. Comm'r of Soc. Sec.,* 167 F.App'x 496, 508 (6th Cir. 2006). But, the ALJ's decision does not provide any indication that he considered anything other than two of Plaintiff's approximately 15 months of treatment with Dr. Riehl. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Length of the treatment relationship and the frequency of examination.") and 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("Nature and extent of the treatment relationship").

Third, while the ALJ's citation of Dr. Riehl's treatment notes occurred within the discussion of Plaintiff's psychological problems (R. at 22, 764-765, 790), and while the ALJ may have known that the MSS was authored by an acceptable medical source – given that her credentials were listed on each page of the exhibit (ECF No. 15, PageID.1469), there is no reference to "psychologist," *i.e.*, the author's specialty, in the ALJ's decision. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("Specialization."). The only reference to "PsyD" is in the opinion's index of the medical records. (R. at 29-30.)

It goes without saying that "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778,

785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).  (ECF No. 15, PageID.1467.)  Here, it is simply unclear whether the ALJ appropriately considered the treatment relationship and/or specialization factors.  This is complicated by the ALJ's "vague reference to the opinion," (ECF No. 12, PageID.1441), *i.e.*, "the opinion in exhibit B11F . . . [,]" (R. at 23, 1190-1191), which leaves the subsequent reviewer without any connection between the anonymously cited MSS from treating psychologist Dr. Riehl and the anonymously cited records from treating psychologist Dr. Riehl, even if they were acknowledged as mental health records.  (*See also* ECF No. 16, PageID.1480.)

The Commissioner argues that the ALJ "properly found that Dr. Riehl's opinion was entitled to limited weight."  (ECF No. 15, PageID.1462.)  For the reasons stated above, the Court should disagree.  Also, even if the Commissioner's characterization of Dr. Riehl's MSS – as having "fairly vague terms" and, thus, failing "to provide any detailed information about her functioning[,]" (ECF No. 15, PageID.1466) – is an accurate one, it is not clear that such a conclusion played into the ALJ's assignment of "limited weight," (R. at 23, 1190-1191).  In sum, notwithstanding the ALJ's express consideration of the supportability and/or consistency factors, the ALJ did not provide "good reasons" for the weight given to Plaintiff's "treating source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Neither the claimant nor the Court should have to speculate as to

what the ALJ knew, considered or found material when making his assignment of weight.

### c.    Summation

The Sixth Circuit "'do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and . . . will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  As set forth above, it is questionable whether the ALJ appropriately considered the opinions of state agency psychological consultant Dr. Krishnan and treating psychologist Dr. Riehl.  Put another way, the ALJ has not provided an "accurate and logical bridge to instruct the Court of her reasoning." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017).  It appearing that there is error in the ALJ's treatment of the mental health opinion evidence (R. at 22-23) that is not cured by the RFC's social interaction or sustained concentration and persistence limitations (R. at 18-19), the matter should be remanded to the Commissioner for issuance of a decision that rectifies the error in the ALJ's treatment of the opinion evidence and any error flowing therefrom.

### 2.    Whether the ALJ appropriately evaluated Plaintiff's symptoms?

Plaintiff argues that the ALJ "erred in his analysis of Ms. Brocks' symptoms, ignoring the symptoms stemming from impairments he found severe[,]" namely Plaintiff's gastrointestinal issues.  (ECF No. 12, PageID.1442-1444.)  Put otherwise, Plaintiff appears to allege that the RFC does not account for Plaintiff's symptoms related to GERD, gastritis and IBS (each of which the ALJ found to be severe at Step 2), such as having an urgent need for bathroom access, being off-task, or needing breaks.  (*Id*., PageID.1442-1443; ECF No. 16, PageID.1482.)  The Commissioner argues that the ALJ "properly evaluated Plaintiff's subjective complaints."  (ECF No. 15, PageID.1470-1473.)  Plaintiff has the burden of proof on this issue.  *Walters*, 127 F.3d at 529.

The SSA acknowledges that "symptoms, such as pain, are subjective and difficult to quantify," and, thus, provides that "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled."  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The SSA will consider relevant factors, including:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(*Id.*)  Moreover, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, *10 (S.S.A. Oct. 25, 2017).  *See also* SSR 16-3p, ! 2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016) (same).

The record illustrates that the ALJ was aware of Plaintiff's gastrointestinal issues.  Preliminarily, at the administrative hearing, Plaintiff testified about gastrointestinal issues, such as "issues with having accidents with [her] bowels." (R. at 40.)  She further testified about the frequency of accidents and that she has "a bedside stool or commode near [her] bed for two reasons[,]" *i.e.*, pain and

urgency.  (R. at 40-41; *see also* R. at 45.)  Upon examination by Plaintiff's

counsel, the VE testified about the effect of "ready access to restrooms" upon job

availability (in terms of being off-task and needing breaks), as well as the effects of

absenteeism and/or tardiness.  (R. at 50-52; *see also* R. at 54.)

The ALJ's written decision also acknowledges Plaintiff's gastrointestinal

issues.  At Step 2, the ALJ determined that Plaintiff's severe impairments included

GERD, gastritis, and IBS.  (R. at 16.)  At Step 3, the ALJ concluded that Plaintiff

has "mild limitation" in "adapting or managing oneself," although the ALJ also

noted that Plaintiff "reported some difficulty with personal care[,]" for which he

relied upon Plaintiff's function report.  (R. at 18, 251-252.)  Within his RFC

determination, the ALJ reviewed the physical MER, the mental health MER, and

the opinion evidence.  (*See* R. at 19-23.)  The ALJ again acknowledged the GERD,

gastritis and IBS within the RFC discussion at the opening of his review of the

MER, though at that point without citation to any particular medical records.  (R. at

19.)  Thereafter, the ALJ, although not by author:

- cited May 25, 2016 progress notes from Donna Jean Huelke, PA-C, and noted that Plaintiff denied "bowel or bladder incontinence," (R. at 868-869); and,

- cited (1) Dr. Riehl's January 5, 2016 notes when acknowledging that Plaintiff "had many psychosocial stressors, which likely exacerbated her GI symptomatology and chronic pain[,]" (R. at 764-765), and (2) Dr. Riehl's February 22, 2016 progress notes when acknowledging that Plaintiff "describe[s]

several ongoing psychosocial stressors . . . [,]" and "difficulty coping with stress[,]" (R. at 790).

(R. at 21, 22.)  It is also worth mentioning that the ALJ's written decision makes myriad references to "pain."  (R. at 18-24.)

Ultimately, in what can best be described as a discussion of Plaintiff's *subjective statements*, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 23-24.)[4]  In doing so, the ALJ considered Plaintiff's "reported limited daily activities" to be "outweighed by the other factors discussed in this decision[,]" and expressly noted that alleged medication side effects were not corroborated by "the medical records, such as office treatment notes[.]"  (R. at 24, 251-255, 257.)  Thus, the ALJ considered at least two factors.  20 C.F.R. §§ 404.1529(c)(3)(i),(iv), 416.929(c)(3)(i),(iv).  Notwithstanding Plaintiff's claim that "[s]he takes medications . . . [,]" her statement of error fails to demonstrate how the ALJ's analysis of "side effects of . . . medication" or "daily activities" is incorrect.  (ECF No. 12, PageID.1442-1444; ECF No. 16, PageID.1481-1482.)

---

[4] Consistently, not only did ALJ Weathers find Plaintiff's statements "not entirely credible . . . [,]" (R. at 64), but also ALJ Dodson found Plaintiff's statements "not entirely consistent with the medical evidence and other evidence in the record . . . [,]" (R. at 24).  Each ALJ used the applicable standard then in place, 20 C.F.R. §§ 404.1529, 416.29 and SSRs 96-4p & 96-7p or SSR 16-3p.  (R. at 64, 19.)

Plaintiff contends that the ALJ's analysis of her symptoms is flawed, not only for its "failure to recognize" Dr. Riehl's opinion, but also for the decision's "virtual[] silen[ce]" as to Plaintiff's *treatment* for gastrointestinal impairments, other than finding them severe at Step 2.  (ECF No. 12, PageID.1442.)  Pointedly, Plaintiff notes that ALJ Dodson did not specifically address Plaintiff's related testimony (R. at 40-41) and, within the RFC finding, did not address "any limitations that might flow from this impairment, such as an urgent need for bathroom access."  (*Id.*, PageID.1443.)  Plaintiff contends this is not harmless, because the VE "could not confirm whether the jobs identified would consistently provide close proximity to a bathroom[,]" and agreed that the need "to take more breaks than the two 15 minute breaks and half hour lunch" would be job preclusive.  (ECF No. 12, PageID.1443; R. at 50-51.)  (*See also* ECF No. 16, PageID.1481-1482.)

Plaintiff's arguments are unconvincing.  First, although Plaintiff's statement of error begins by noting that the SSA "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements[,]" 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), Plaintiff's statement of error cites only the hearing testimony (R. at 40-41, 50-51) and the ALJ's written decision (R. at 16-25).

Plaintiff's assertion that the ALJ's decision was "virtually silent" as to her gastrointestinal treatment (which included visits with "a gastrointestinal specialist," presumably Amy Hosmer, M.D. and Chanakyaram Ayyadap Reddy, M.D., and "a psychologist specializing in gastrointestinal issues," presumably Dr. Riehl) is unsupported with citations to the medical record that would show this "virtual silence" to have been in error.  (*See* ECF No. 12, PageID.1442-1444; ECF No. 16, PageID.1481-1482.)[5]

Second, to the extent Plaintiff challenges the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely consistent with* the medical evidence and other evidence in the record for the reasons explained above[,]" the ALJ had already stated that "a review of the record in this case reveals no restrictions recommended by the treating doctors."  (R. at 24 (emphasis added); ECF No. 12, PageID.1443.) Among other things, the Commissioner contends that "there is no evidence" that the gastrointestinal specialist – presumably either Dr. Hosmer or Dr. Reddy – "suggested any functional restrictions."  (ECF No. 15, PageID.1472-1473.)  *See Villarreal v. Comm'r of Soc. Sec.*, No. 12-CV-12041, 2013 WL 3981008, at *7

---

[5] Plaintiff should not expect the Court to go to other areas of her brief – whether the gastroenterology records cited in the statement of facts (ECF No. 12, PageID.1423, 1425) or those cited within her statement of error concerning the ALJ's treatment of Dr. Riehl's opinion (*id.*, PageID.1439-1440) – to find Plaintiff's support for this statement.

(E.D. Mich. Aug. 1, 2013) (Steeh, J., *accepting report and recommendation of* Michelson, M.J.) ("no medical opinion in the record questions Plaintiff's ability to work.").  Plaintiff's reply does not enlighten the Court, as the related portion only cites to her testimony (R. at 40-41) and the ALJ's written decision (R. at 16, 18-19).  (ECF No. 16, PageID.1481-1482.)[6]

Plaintiff has not convincingly shown that her symptoms were improperly evaluated under 20 C.F.R. §§ 404.1529, 416.929 or SSR 16-3p.  And, per my above scrutiny, I disagree with Plaintiff's contention that "[t]he ALJ's analysis of Ms. Brocks's experience of pain and other symptoms leaves his decision beyond meaningful appellate review."  (ECF No. 12, PageID.1444.)

## F.    Conclusion

Although Plaintiff has not satisfied her burden to overturn the ALJ's assessment of her symptoms, Plaintiff has shown error in the ALJ's treatment of the opinion evidence within the RFC determination.  *Walters,* 127 F.3d at 529.

---

[6] In response to the Commissioner's reference to the VE's testimony about bathroom access (R. at 50) (*see* ECF No. 15, PageID.1473), Plaintiff notes that her bowel accidents "are not remedied simply by ready access to a bathroom, but also with respect to the time it takes her off task to clean up from such accidents[,]" (ECF No. 16, PageID.1482.  To the extent Plaintiff claims that the RFC did not appropriately consider the time she would be off-task or need breaks, Plaintiff will be free to re-explore this issue on remand, in the context of the ALJ's re-evaluation of Dr. Riehl's opinion, which notes, *inter alia*, that Plaintiff's "medications can require patient to be close to the bathroom for urgency reasons and can also cause fatigue and brain fog."  (R. at 1190.)

Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT IN PART and DENY IN PART** Defendant's cross-motion for summary judgment (ECF No. 15). The matter should be **REMANDED** to the Commissioner for issuance of a decision that rectifies the error in the ALJ's treatment of the opinion evidence and any error flowing therefrom, as identified in this report.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   February 2, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE